**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MOHAMMAD ZAHID ASLAM,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES,<br>Attorney General, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 1:07cv331 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Pursuant to Local Rule 7(F)(1), defendants, through their undersigned counsel, hereby respectfully submit the instant memorandum of law in support of their motion to dismiss in the above-captioned action.

**INTRODUCTION**

On March 17, 2005, plaintiff, Mohammed Zahid Aslam ("Aslam"), filed an application with United States Citizenship and Immigration Services ("USCIS") to adjust his alien status in the United States to that of lawful permanent resident ("LPR"). Ostensibly unsatisfied with the speed by which the processing of that application has proceeded, Aslam asks this Court – pursuant to both the Administrative Procedures Act ("APA") and the Mandamus Act – to compel USCIS to issue a final adjudication of his application.

As the declarations attached to the instant memorandum demonstrate, USCIS has begun processing Aslam's application. That processing continues to this day, including a recent request by USCIS for an update on plaintiff's fingerprints. And importantly, USCIS has not received the

vitally important results of the name check performed by the Federal Bureau of Investigation ("FBI") that serves "to ensure that [Aslam] is eligible for the benefit [he seeks] and that he . . . is not a risk to national security or public safety" before bestowing upon him the significant benefit of lawful *permanent* residence in the United States. Defense Exhibit ("DEX") 1, ¶1. Accordingly, as one jurist has cogently noted:

> This is not a situation where USCIS refuses to take any action to process a LPR application or [] where [the] delay equates to a refusal to process a LPR application altogether either by intention or accident.

Hu v. Chertoff, 2007 WL 1515067, at *4 (E.D. Cal. May 22, 2007).[1]

As discussed in far greater detail below, these and other reasons demonstrate both that this Court lacks subject matter jurisdiction over plaintiff's complaint, and that plaintiff's claims fail on their merits as a matter of law. See FED. R. CIV. P. 12(b)(1); (b)(6). More specifically, pursuant to the recent amendments promulgated to the Immigration and Nationality Act ("INA"), Congress has specifically divested district courts of subject-matter jurisdiction over claims such as those plaintiff proffers in his instant complaint. Even without these *specific* jurisdictional difficulties, however, this Court would be without subject-matter jurisdiction to adjudicate plaintiff's claims because the allegations serving to support those claims do not meet the high bar Congress set for the invocation of the waivers of sovereign immunity found in both the APA and the Mandamus Act.

With this said, defendants and their undersigned counsel are aware of this Court's recent bench ruling in Nastroya v. Chertoff, No. 1:07cv190 (E.D. Va.) (Brinkema, J.) (DEX 3), which

[1] In deference to plaintiff's *pro se* status, all unpublished decisions have been appended to the instant memorandum at DEX 2.

raised similar legal issues. Although the United States certainly respects this earlier ruling, it disagrees with the same, and respectfully offers the instant memorandum as a means to persuade this Court to reconsider its decision – to the extent that such was a final determination of the significant jurisdictional issues raised by claims such as those in plaintiff's complaint. Further, defendants reiterate these jurisdictional arguments as a means to preserve the same for potential appellate review. See, e.g., City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 275 n.4 (1981) (noting the necessity of raising arguments fully before district court).

## FACTUAL BACKGROUND

On March 17, 2005, plaintiff filed an application with USCIS seeking to adjust his alien status in the United States to that of "lawful permanent resident." Complaint, ¶2. Pursuant to the federal immigration code, a "lawful permanent resident" ("LPR") is an alien that the United States – as a sovereign nation – has "lawfully accorded the *privilege* of residing *permanently* in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(20) (emphasis added).[2] It is hard to overemphasize the nature of the privilege conferred upon an alien by LPR status; indeed, short of naturalizing an alien as a citizen of the United States, LPR status is the most serious benefit that the United States can afford an alien. As plaintiff's own complaint recognizes, LPR status would allow him to "travel and work without restrictions," as well as begin to accrue time necessary to apply to become a naturalized citizen of the United States. Complaint, ¶20. The need to ensure that the individual who applies for such unfettered and permanent access to the United States and its citizens would not pose a danger to the security of

[2] Those aliens who have obtained LPR status are also known as "green card" holders. See, e.g., United States v. Grand China, Inc., 376 F. Supp. 2d 1150, 1150 (D.N.M. 2004); Kato v. County of Westchester, 927 F. Supp. 714, 716 (S.D.N.Y. 1996).

our nation and its people is therefore nothing short of both obvious and of grave importance. In fact, as the attached materials demonstrate, an individual who has been accorded LPR status "could obtain work in sensitive industries and travel on transportation carriers more easily." DEX 1, ¶5.

The INA vests in the Attorney General or the Secretary of Homeland Security the discretion to provide lawful permanent resident status to aliens who have been lawfully admitted to the United States, and who meet certain additional requirements. Significantly, however, *whether* an alien receives this benefit is *entirely* within the discretion of either the Attorney General or the Secretary even if they meet the aforementioned requirements:

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General [or Secretary of Homeland Security], *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (emphasis added).[3] Of premier importance, nothing in this statutory language provides any specific (or general) time within which an application for adjustment to LPR status must be adjudicated by USCIS. The extensive and detailed regulations governing such adjustment requests are of a similar import, providing no timeframe or deadline by which USCIS must make a final adjudication of an adjustment application. See 8 C.F.R. §§ 245.1 - 245.22.

In order to protect the significant national security and public safety interests implicated by

---

[3]Notwithstanding the fact that § 1255 refers only to the Attorney General, with the establishment of the Department of Homeland Security, the Attorney General now shares authority over adjustment of status with the Secretary of Homeland Security. See 6 U.S.C. §§ 271(b)(5); 557.

adjustment applications such as those presented by plaintiff, shortly after plaintiff filed his application, on March 26, 2005, USCIS took plaintiff's fingerprints. Complaint, ¶11 & ex.B. As provided by the attached declaration, however, the mere fingerprint check referenced above is far from the only mechanism the Executive Branch utilizes in order to inquire into an applicant's *bona fides* and whether he or she would pose a risk to national security or public safety. Far to the contrary, the security checks performed by USCIS – in conjunction with both the FBI and other components of the Department of Homeland Security ("DHS") of which USCIS is a part – are necessarily thorough:

- a FBI fingerprint check for any pertinent criminal history records on the alien;
- a check of the Interagency Border Inspection System ("IBIS"), which contains records and "watch list" information from more than twenty federal law enforcement and intelligence agencies; and
- a FBI name check, which runs the alien's name through the FBI's exhaustive investigative databases in order to retrieve information about the alien that might have been missed through the aforementioned fingerprint check.

DEX 1, ¶1.[4] As USCIS' Field Office Director explains, "[n]o immigration benefit . . . is granted unless and until all the above-required background checks have been completed and resolved." Id. Although USCIS requested the necessary name check from the FBI in July 2005, the FBI has

[4]Although plaintiff bemoans the fact that there is no *specific* regulatory provision that *requires* a FBI name check as part of the background examination on an alien's application for LPR status, Complaint, ¶16, the federal immigration code unequivocally provides that immigration authorities – such as USCIS – are to maintain a "direct and continuous liaison with the Directors of the Federal Bureau of Investigation and the Central Intelligence Agency and with other internal security officers of the Government for the purpose of obtaining and exchanging information for use in enforcing the provisions of this chapter in the interest of the internal and border security of the United States." 8 U.S.C. § 1105(a). One can hardly doubt that the above-mentioned security reviews of applicants for a rather significant immigration benefit fit this requirement perfectly.

not yet been able to complete that check and return the results of the same to USCIS. Id. ¶8.

Given the nation's needs – especially in the dangerous environment that pervades the United States after the events of September 11, 2001 – this "backlog" of FBI name checks is hardly surprising. As the attached declaration demonstrates, the FBI works through the extensive number of name check requests as quickly as it possibly can, without performing a cursory review and therefore endangering the American public. Initially, the FBI provides name check "services" for entities other than merely the various immigration components (including USCIS) of the federal government; to the contrary, "[m]ore than 70 federal, state, and local agencies" (in addition to the FBI's *own* criminal investigation and counterterrorism components) seek such assistance. DEX 4, ¶5. In order to be fair to the countless number of individuals who seek immigration benefits on an annual basis, the FBI processes the name check requests it receives from USCIS on a "first in, first out" basis. Id. ¶19.

And notwithstanding the fact that it has yet to receive the name check results from the FBI, USCIS continues to process plaintiff's application for LPR status. In particular, USCIS officials initiated – once again – IBIS checks on plaintiff on June 1, 2007, and those checks have been successfully completed. DEX 1, ¶10. Moreover, on June 1, 2007, USCIS scheduled plaintiff for another fingerprint appointment to further the processing of his application – that appointment is presently-scheduled for the morning of June 12, 2007. Id. ¶9.

## ARGUMENT

### I. RELEVANT STANDARDS

Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject matter jurisdiction in a particular matter. See, e.g., Coulter v. United States, 256 F. Supp. 2d 484,

486 n.3 (E.D. Va. 2003), aff'd, 90 Fed. Appx. 60 (4th Cir. 2004). The plaintiff bears the burden of establishing the court's subject matter jurisdiction, and although this Court may utilize the allegations contained within the four corners of the plaintiff's complaint as *evidence* in determining whether it possesses jurisdiction over a dispute, it may also consider other evidence outside the pleadings if necessary. See Richmond, Fredericksburg, & Potomac R.R. Corp. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Coulter, 256 F. Supp. 2d at 486 n.3. A motion brought pursuant to Federal Rule 12(b)(1) should be granted if the facts upon which the question of the court's jurisdiction are based are undisputed and the movant is entitled to "prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

## II. RECENT AMENDMENTS TO THE INA DIVEST THIS COURT OF JURISDICTION OVER PLAINTIFF'S CLAIMS

During the past decade, Congress has repeatedly amended the INA, each time continuing to strip the district courts of subject matter jurisdiction over certain categories of claims or allegations concerning the immigration process. Indicative of this unequivocal congressional approach is 8 U.S.C. § 1252(a)(2)(B), which provides, in pertinent part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . . sections 1361 and 1651 of [Title 28], and except as provided in subparagraph (D), and regardless of whether the judgment, decision or action is made in removal proceedings, no court shall have jurisdiction to review–
>
> > (I) any judgment regarding the granting of relief under section 1182(h), 1182(I), 1129b, 1229c, or 1255 of this title, or
> >
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of [Title 8].

8 U.S.C. § 1252(a)(2)(B). Although subsection (I) of the aforementioned statutory provision does not apply to the instant circumstances because there has not yet been any "judgment regarding the granting of relief" with respect to plaintiff's adjustment application, subsection (ii), which applies broadly to "any other decision or action," precludes this Court's review of plaintiff's claims.

Under 8 U.S.C. § 1252(a)(2)(B)(ii), courts are barred from reviewing any "action" the "authority for which is specified . . . to be discretion[ary]" under "this subchapter." In seeking to compel the adjudication of an adjustment of status application under 8 U.S.C. § 1255, plaintiff's claims fall squarely within the plain meaning of each of these terms. See Escobar v. INS, 935 F.2d 650, 652 (4th Cir. 1991) ("The first step in the interpretive effort is to ascertain whether the language in issue has a plain and ordinary meaning . . . ."). As one of this Court's Eastern District brethren has already noted, the "meaning" of § 1252(a)(2)(B)(ii) "is refreshingly free from ambiguity and its terms are pellucidly clear[.]" Safadi v. Howard, 466 F. Supp. 2d 696, 698 (E.D. Va. 2006). In order to cement the understanding that the terms of § 1252(a)(2)(B)(ii) apply to the claims that plaintiff's complaint proffers, however, the instant memorandum will proceed to an explanation of the connection between the terms of the statute and the circumstances that serve as the foundation for plaintiff's complaint.

Initially, "**this subchapter**" refers to Subchapter II of Chapter 12 of Title 8 of the U.S. Code, which is composed of the statutes codified between 8 U.S.C. § 1151 and § 1378. The statute that grants the Secretary of Homeland Security *discretion* over the adjudication of applications seeking adjustment of status, 8 U.S.C. § 1255(a), is therefore undeniably part of Subchapter II.

Second, under § 1255(a), the "authority" for adjudicating adjustment of status applications

is "**in the discretion of the . . . Secretary of Homeland Security**." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). Section 1255(a) provides that an alien's status "*may* be adjusted by the [Secretary of Homeland Security], *in his discretion* and under such regulations as he may prescribe." 8 U.S.C. § 1255(a) (emphasis added). The statute provides no time frame for the adjudication of adjustment applications like those that form the basis for plaintiff's instant complaint. In failing to specify any temporal limitations, and in leaving it to the Secretary to prescribe any appropriate regulations, Congress vested the Secretary with complete discretion over the process of adjudicating I-485 applications. See Safadi, 466 F. Supp. 2d at 699 (recognizing that the adjustment process is "wholly discretionary" (quoting Zheng v. Reno, 166 F. Supp. 2d 875, 880 (S.D.N.Y. 2001)). The discretion vested by § 1255(a) necessarily includes not only discretion over the ultimate decision of whether to grant the adjustment sought, but also over the process of reviewing the application and the pace at which it proceeds. See id. at 699.[5] As explained in the Dibbins declaration, such broad discretion is necessary to permit the agency to adjudicate applications only after conducting critical security and background checks and resolving any concerns that may arise from them. See generally DEX 1.

Finally, plaintiff is seeking judicial review of an "**action**." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added). In contrast with the finite words "judgment" or "decision," the word "action" in § 1252(a)(2)(B)(ii) refers to an ongoing process or a series of acts. See Safadi, 466 F. Supp. 2d at 699 (finding that the "plain meaning" of action is "an act or series of acts") (quoting BLACK'S

---

[5]Nor is this discretion simply a vapid exercise of power or authority. As the supporting materials ably demonstrate, the broad discretion instilled in the Secretary of Homeland Security is necessary to permit the agency to adjudicate applications only after conducting the critical security and background checks and resolving any security or safety concerns that may arise therefrom.

LAW DICTIONARY 28 (6th ed. 1990)). As the attached declaration demonstrates, adjudicating an adjustment of status application is far more than a mere "up or down" vote; to the contrary, it is an intricate and detailed process that requires several different federal agencies (primarily USCIS and FBI) to conduct several security checks and to follow up on the subsequent results with additional inquiries if necessary. See generally DEX 1, ¶¶ 1-4. This Court thus held in Safadi that "'action' in § 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." Safadi, 466 F. Supp. 2d at 699 (emphasis in original).

Although many of the citations in the above analysis are derived from Judge Ellis' cogent and detailed opinion on the application of § 1252(a)(2)(B)(ii) to the instant circumstances, he is hardly alone in adopting this jurisdictional holding. Indeed, two additional members of this Court's Alexandria brethren have accepted the proposition that § 1252(a)(2)(B)(ii) divests the federal district courts of subject matter jurisdiction over civil actions that seek to compel USCIS to issue a final adjudication of an application for adjustment of status pursuant to § 1255(a). In Jeafarquomi v. Gonzales, No. 1:07cv19 (E.D. Va.), through an order dated April 30, 2007, Judge Hilton dismissed – on jurisdictional grounds – a complaint that is virtually identical to that which is the subject of this litigation, holding that "the ongoing review process challenged . . . constitutes 'action' within the meaning of 8 U.S.C. § 1252(a)(2)(B)(ii)." Id. at 4 (DEX 5). And in both Dmitrenko v. Chertoff, 2007 WL 1303009 (E.D. Va. Apr. 30, 2007) (DEX 6), and Patil v. Mueller, 2007 WL 1302752 (E.D. Va. Apr. 30, 2007) (DEX 7), Judge Cacheris dismissed two virtually identical complaints. In both decisions, Judge Cacheris held that the text of the recent amendments "that strengthened the jurisdiction-stripping provisions to the" INA rendered it "clear

. . . that federal courts are not to interfere with the discretion of agencies in these matters." Dmitrenko, 2007 WL 1303009, at *1; Patil, 2007 WL 1302752, at *1.[6]

Nor is the Eastern District an outlying tribunal with respect to these issues, as several other courts have adopted similar reasoning to derive identical jurisdictional results. In Grinberg v. Swacina, 478 F. Supp. 2d 1350 (S.D. Fla. 2007), the district court concluded that "Congress intended to include the pace" by which adjustment applications are processed and ultimately adjudicated within the discretion that is immune from federal district court review pursuant to § 1252(a)(2)(b)(ii). Id. at 1353-54. Moreover, in Serrano v. Quarantillo, 2007 WL 1101434 (D.N.J. Apr. 9, 2007), the district court held that it lacked jurisdiction over a virtually identical complaint because of, *inter alia*, the application of § 1252(a)(2)(B)(ii). See id. at *2-4. Finally, in Hu v. Chertoff, 2007 WL 1515067 (E.D. Cal. May 22, 2007) derived a similar conclusion, holding as follows:

> This Court concludes that the pace at which USCIS adjudicates plaintiffs' applications is discretionary. This is not a situation in which USCIS refuses to take any action to process a LPR application or [] where [the] delay equates to a refusal to process a LPR application altogether either by intention or accident. Should USCIS refuse to take any steps whatsoever to resolve a LPR application or employ procedures such that no decision *will* issue, it might legitimately be said that the agency's inaction was not the result of an exercise of discretion at all. . . .
> . . . .
>
> That is not the case here.

Id. at *4 (emphasis added).

---

[6]In both decisions, Judge Cacheris – through a poignant quote from none other than Shakespeare himself – noted that plaintiff is understandably frustrated by what he termed "the delays of a cumbersome bureaucracy." Dmitrenko, 2007 WL 1303009, at *1 n.1. But notwithstanding his underlying desire "to grant solace to all persons in such position," Judge Cacheris noted that the federal district courts "stand[] powerless to grant a legal remedy." Id.

And it is also not the case here. As the supporting materials appended to the instant motion demonstrate, USCIS – to *this day* – continues to take action necessary to bring plaintiff's application to ultimate closure. In the past week, USCIS has updated plaintiff's IBIS review, and has scheduled an appointment to re-perform plaintiff's fingerprint analysis. Had USCIS failed to accomplish these matters, one *might* believe (albeit erroneously) that USCIS was – in reality – uninterested in adjudicating plaintiff's application at all, or was (as the Hu Court identified earlier) refusing to process the application. But the true facts objectively belie any such notion, as USCIS continues to ensure that when the FBI provides the results of the name check, it will be in a position to adjudicate plaintiff's application as expeditiously as possible.

Indeed, given these facts, plaintiff's true challenge in the instant action – as identified by the express language of his complaint itself, Complaint, ¶16 – is the Secretary's discretionary decision to require the completion of a FBI name check before final adjudication of adjustment petitions. As § 1255(a) explicitly provides, however, whether and under what circumstances (other than the threshold requirements) an alien's immigration status in the United States is approved is entirely within the discretion of the Secretary. See 8 U.S.C. § 1255(a). And even if it were within this Court's purview, no one can truly take issue with the necessity of performing the searching type of review the FBI undertakes before bestowing that type of significant immigration benefit upon an alien.

In sum, because the process of how an adjustment application is adjudicated lies within the discretion of the Secretary, § 1252(a)(2)(B)(ii) divests the Court of jurisdiction to intervene in

the adjudicative process.[7] Congress's specific withdrawal of subject matter jurisdiction from this Court defeats Plaintiff's assertion of jurisdiction under either 28 U.S.C. § 1361 or the APA, as § 1252(a)(2)(B) expressly states that it applies "notwithstanding any other provision of law, . . . including . . . section[] 1361." See Safadi, 466 F. Supp. 2d at 700 (noting that § 1252(a)(2)(B) specifically precludes judicial review notwithstanding § 1361 or any other provision of law); see also Danilov v. Aguirre, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005) ("[I]t is well settled that general grants of jurisdiction may not be relied upon to expand a very specific statute that either grants or limits jurisdiction."). Moreover, the APA explicitly provides that it does not apply where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Accordingly, the Court lacks subject matter jurisdiction over plaintiff's complaint, and it should be dismissed in its entirety pursuant to Federal Rule 12(b)(1).

## III. THE ALLEGATIONS CONTAINED WITHIN PLAINTIFF'S COMPLAINT DO NOT MEET THE STRINGENT REQUIREMENTS ON THE WAIVER OF SOVEREIGN IMMUNITY FOUND IN THE MANDAMUS ACT

Even if § 1252(a)(2)(B)(ii) did not divest this Court of subject-matter jurisdiction, plaintiff cannot meet the high hurdle necessary to invoke the waiver of sovereign immunity found in the Mandamus Act, codified at 28 U.S.C. § 1361. More specifically, the Mandamus Act provides as follows:

---

[7] The withdrawal of subject matter jurisdiction in this context is consistent with the well-established proposition that judicial review in immigration matters is narrowly circumscribed, see Reno v. Flores, 507 U.S. 292, 305 (1993), and that control over immigration is largely entrusted to the political branches of the government, see United States v. Valenzuela-Bernal, 458 U.S. 858, 864 (1982); Mathews v. Diaz, 426 U.S. 67, 81 (1976) ("Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary.").

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361. Plaintiff's particular mandamus claim fails at the threshold because, as stated earlier, the statutes and regulations governing adjustment applications demonstrate that defendants do not have *any* duty, let alone one that is *clear*, to adjudicate such an application within any particular time frame.

The Supreme Court has repeatedly held that "the remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980); see also Will v. United States, 389 U.S. 90, 95 (1967); Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382-85 (1953). A writ of mandamus may only issue if plaintiff demonstrates the existence of three elements: "(1) the petitioner has shown a clear right to the relief sought; (2) the respondent has a clear duty to do the particular act requested by the petitioner; and (3) no other adequate remedy is available." In re First Federal Sav. & Loan Ass'n of Durham, 860 F.2d 135, 138 (4th Cir. 1988). Plaintiff's right to the relief sought must be "clear and indisputable," Allied Chemical, 449 U.S. at 35 (internal quotations and citation omitted), and the defendant must owe the plaintiff "a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984); see also In re First Federal Sav. & Loan, 860 F.2d at 138 ("Mandamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free of doubt.").

In the instant circumstances, plaintiff lacks a clear right to adjudication of his adjustment application within a particular time frame, and USCIS has no clear mandatory or ministerial obligation to adjudicate the application at a specific time. The decision whether to grant or deny

plaintiff's adjustment application is plainly committed to the discretion of the Secretary under 8 U.S.C. § 1255, and there are no statutory or regulatory provisions that mandate the adjudication of adjustment applications within a particular time frame. Consequently, USCIS has no clear, mandatory duty to adjudicate Plaintiff's application at any particular time.

For these reasons, courts have routinely found that mandamus relief is unavailable to compel immediate adjudication of applications for adjustment of status. See, e.g., Safadi, 466 F. Supp. 2d at 700 ("Additionally, plaintiff's request for a writ of mandamus, pursuant to 28 U.S.C. § 1361, fails because the defendant does not owe plaintiff a 'clear nondiscretionary duty' to process his . . . application at any particular pace or speed."); Saleh v. Ridge, 367 F. Supp. 2d 508, 511 (S.D.N.Y. 2005) ("The Court therefore lacks subject matter jurisdiction to compel agency action by writ of mandamus in this case."); Karan v. McElroy, 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) ("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the authority under . . . the mandamus statute. . . to grant the relief the Plaintiff seeks."); Zheng, 166 F. Supp. 2d at 880-81. As the district court in Saleh noted, "[a]djustment of immigration status . . . is a discretionary act, and therefore, [i]n keeping with the plain language [of 8 U.S.C. § 1255(a)], courts have consistently found mandamus inappropriate in actions based on the government's failure to adjust an applicant's status." Saleh, 367 F. Supp. 2d at 511 (brackets original, internal quotation marks omitted).

In sum, because the timing of the adjudication of plaintiff's adjustment of status application is not "subject to positive command, plainly described and free from doubt," plaintiff is not entitled to the extraordinary relief of mandamus. Rahman, 884 F. Supp. at 787 (internal

quotations and citation omitted). The Court thus lacks jurisdiction[8] to issue the writ plaintiff seeks pursuant to § 1361.

## IV. The APA Similarly Does Not Provide Plaintiff With a Waiver of Sovereign Immunity

Plaintiff also seeks relief under the provisions of the APA, arguing that this Court may accept jurisdiction of his claim because USCIS has unreasonably delayed the adjudication of his adjustment application – a claim this Court would only need to reach if it held that 8 U.S.C. § 1252(a)(2)(B)(ii) does not divest it of jurisdiction. See 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"). The APA does not, however, entitle a person to judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see Brock v. Pierce County, 476 U.S. 253, 260 n.7 (1986). Here, § 701(a)(2) precludes judicial review over Plaintiff's claims because the adjudication of I-485 applications is committed to agency discretion. See Safadi, 466 F. Supp. 2d at 700 (holding, in the alternative, that judicial review under the APA was precluded).

The APA itself does not confer jurisdiction on a district court to review the decision of an administrative agency. See Califano v. Sanders, 430 U.S. 99, 107 (1977). However, a district court may have subject matter jurisdiction under 28 U.S.C. § 1331 over a claim that an agency has violated the APA if the claim is not "wholly insubstantial and frivolous" or "patently without merit." Bell v. Hood, 327 U.S. 678, 682-84 (1946).

---

[8]As this Court is well aware, limitations on the waiver of the United States' sovereign immunity concomitantly serve as limitations on the exercise of this Court's subject-matter jurisdiction. See, e.g., Andrews v. United States, 441 F.3d 220, 223 (4th Cir. 2006). Accordingly, the failure to meet the qualifications for a proper waiver of sovereign immunity deprives the Court of jurisdiction, and results in the dismissal of the claim or complaint pursuant to Federal Rule 12(b)(1).

Even where subject matter jurisdiction to review an APA claim exists, however, a claim is nevertheless unreviewable by the courts if the relevant agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). "Agency action" is defined under the APA to include a "failure to act." Id. § 551(13). In Heckler v. Chaney, 470 U.S. 821 (1985), the Supreme Court interpreted § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that the court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 830; see also Collins Music Co. v. United States, 21 F.3d 1330, 1335 (4th Cir. 1994) ("The use of precatory language makes it impossible to ascertain a standard against which the action or inaction of the [agency] can be measured.")

As explained above, the process of adjudicating an adjustment of status application, including the pace at which the adjudication occurs, is committed to agency discretion. See 8 U.S.C. § 1255(a) (using precatory language to provide that an alien's status "*may* be adjusted by the [Secretary], in his discretion and under such regulations as he *may* prescribe") (emphasis added); Safadi, 466 F. Supp. 2d at 699. No statutory or regulatory provisions provide a "meaningful standard" against which to measure USCIS's process of adjudicating such an application. Heckler, 470 U.S. at 830. Rather, the agency maintains complete discretion to determine not only whether to adjudicate the adjustment application, but also "how and when" to do so. Id.; see Safadi, 466 F. Supp. 2d at 699 ("The absence of any [reference to time limits] is consistent with, and confirmatory of, Congress' intent to confer on USCIS discretion over not just the adjustment of status decision, but also the process employed to reach that result . . . ."). In contrast with other immigration laws, see, e.g., 8 U.S.C. § 1447(b) (requiring adjudication of naturalization applications 120 days after examination), the statute and regulations governing

Plaintiff's adjustment of status application provide no time frame for when such an application must be adjudicated. See Zheng, 166 F. Supp. 2d at 879 ("[T]here is no requirement that the application be decided within a specific period of time[.]"). Consequently, there is no standard against which the Court can measure whether the Agency has "unreasonably delayed" adjudication of the I-485 application. See 5 U.S.C. § 706(1).

In the absence of a specified time frame for adjudication, other courts have likewise found that claims relating to alleged delays in the process of adjudicating an adjustment of status application are unreviewable under the APA. See Zheng, 166 F. Supp. 2d at 878-80; Karan v. McElroy, 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) ("[B]ecause decisions regarding the plaintiff's immigration status are committed to the discretion of the INS, this Court lacks the authority under . . . the APA to grant the relief the plaintiff seeks."); see also Rahman v. McElroy, 884 F. Supp. 782, 787-88 (S.D.N.Y. 1995). In addition, at least two Supreme Court cases suggest the importance of a specified time period in allowing a court to compel agency action that is "unreasonably delayed" under § 706(1). See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 65 (2004) ("Thus, when an agency is compelled by law to act *within a certain time period* . . . a court can compel the agency to act . . . .") (emphasis added); Brock, 476 U.S. at 260 n.7 (finding that because "the statutory command that the Secretary 'shall' act within 120 days does not commit such action to the Secretary's discretion, . . . [t]he court would have the authority to 'compel agency action unlawfully withheld or unreasonably delayed,' § 706(1)").

Without any mandatory time frame, in order to adjudicate plaintiff's claim that USCIS has "unreasonably delayed" adjudication of his application, this Court would have to create a temporal standard out of whole cloth. See Safadi, 66 F. Supp. 2d at 699 ("A contrary conclusion would

require judicial review in the absence of statutory standards, an unsound result surely not intended by Congress."). This is a perilous task, especially given the national security considerations that affect USCIS's adjudicative process in the post 9/11 world. See DEX 1, ¶ 5. Moreover, as other courts have cautioned, in "'matters solely within the INS's discretion[,] . . . aside from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.'" Rahman, 884 F. Supp. at 787 (quoting Wan Shih Hsieh v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978)); see also Heckler, 470 U.S. at 831-82 (noting that "[t]he agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities").

Accordingly, the Court should find that 5 U.S.C. § 701(a)(2) precludes review of the agency's adjudicative process because it is committed to agency discretion by law.

* * *

In the end, as Judge Cacheris held:

> [I]n this post-9/11 context, agencies must have the freedom to carefully and thoroughly investigate these applications without judicial interference in their priorities. Furthermore, to grant relief in this case would set a dangerous precedent, sending a clear signal that more litigious applicants are more likely to be moved to the top of the proverbial pile over other applicants that have waited even longer. Such a situation hardly optimizes resources, and serves only the individual at the detriment to the group.

Dmitrenko, 2007 WL 1303009, at *1.

///

///

## CONCLUSION

For the foregoing reasons, this Court should dismiss plaintiff's complaint for a lack of subject matter jurisdiction.

Respectfully submitted,

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By: /s/

DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
Email: dennis.barghaan@usdoj.gov

DATE: June 11, 2007

ATTORNEYS FOR DEFENDANTS

OF COUNSEL: Michael Metzgar
Department of Homeland Security

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true copy of the foregoing was served on plaintiff (a "non-filing user") by first class mail addressed to:

Mohammad Zahid Aslam
5510 N. Morgan Street, Apt. #304
Alexandria, Virginia 22312

Date: June 11, 2007

/s/

DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
Email: dennis.barghaan@usdoj.gov